UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W. WILSON,<br><br>    Plaintiff,<br><br>    v.<br><br>STUART SHERMAN, et al.,<br><br>    Defendants. | Case No.: 1:22-cv-00874 JLT SKO (PC)<br><br>**FINDINGS AND RECOMMENATIONS TO DISMISS CERTAIN CLAIMS**<br><br>**14-DAY OBJECTION DEADLINE** |

Plaintiff David W. Wilson is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.    BACKGROUND**

The Court issued its First Screening Order on June 26, 2023, and found that Plaintiff's first amended complaint failed to state a claim against any named defendant. (Doc. 25 at 7-14.) Plaintiff was granted leave to file a second amended complaint, curing the deficiencies identified in the screening order. (*Id*. at 14-15.) On July 18, 2023, Plaintiff filed a second amended complaint. (Doc. 26.)

On August 16, 2023, Plaintiff filed a request to "correct word errors" in the amended complaint. (Doc. 27.) The following day, the Court issued its Order Re Plaintiff's Request To Correct Word Errors, granting Plaintiff's request to correct two misspelled words. (Doc. 28.)

//

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of ` prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation

2

marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B.  Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C.  Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

3

'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982

**IV.   DISCUSSION**

**A. Plaintiff's Second Amended Complaint**[1]

Plaintiff names Wardens Bryan P. Phillips, Stuart Sherman and Theresa Cisneros, Chief Deputy or Associate Wardens Jason Collins, S. Marsh, S. Smith, and R. Morales, Captain Amber Williams, Sergeants S. Leahy and E. Rocha, Plant Operations Chief Engineer Jan Lines, and Hazardous Materials Specialist Flavio Florez employed at the California Substance Abuse

---

[1] Plaintiff titled his complaint "First Amended Complaint For Temporary And Permanent Injunction And Protection And Enforcement And Sanctions Relief For Inadequate Cool Ventilation And Black Mold Imminent Danger." (Doc. 26.) This amended complaint is Plaintiff's second amended complaint because Plaintiff filed a first amended complaint on January 17, 2023. (Doc. 12.) The first amended complaint was the subject of the Court's First Screening Order. (*See* Doc. 25.) Moreover, the Court has denied his motions for injunctive relief and a protection order. (*See* Docs. 19 & 24.)

4

Treatment Facility ("SATF") in Corcoran, California, as defendants in this action. (Doc. 26 at 1, 3, 17-18.)

Plaintiff seeks various forms of injunctive relief (Doc. 26 at 12-14), attorneys fees[2] and costs of suit, and any other relief the Court deems just and proper (*id*. at 14).

### B. Plaintiff's Factual Allegations

Plaintiff contends that on June 6, 2019, he sent three requests for interviews to Defendants Sherman,[3] Williams and Lines "to correct constitutional deprivations." (Doc. 26 at 3.) These requests concerned swamp coolers, and ventilation issues in Building 1, Facility B. (*Id*. at 3-4.) Plaintiff alleges Defendant Collins responded for Defendant Lines on June 11, 2019, indicating a work order was in the system and Plaintiff should resubmit "to custody." (*Id*. at 4.) Plaintiff responded the following day, indicating he was dissatisfied. (*Id*.) On June 12, 2019, Plaintiff filed a health request and was seen by a medical doctor for dizziness and headaches attributable to the heat. (*Id*.)

Plaintiff contends that on June 14, 2019, a counselor responded for the warden stating SATF has an institutional heat plan which will continue to be followed. (Doc. 26 at 4.) Plaintiff contends this response was false and that the heat plan is not recorded accurately, resulting in a denial of cooling measures. (*Id*.) Plaintiff asserts the warden is responsible for policy inaction and can respond to constitutional violations. (*Id*.)

On June 17, 2019, Defendant Leahy indicated a work order had been submitted to have plant operations look at the swamp coolers in Building 1, plant operations was aware the swamp coolers were not working and the parts to fix the problem were on order. (Doc. 26 at 5.) Leahy also indicated portable swamp coolers were not available and that stand-up fans were provided. (*Id*.) Plaintiff contends this response is false because the stand-up fans were "diverted" by staff.

---

[2] Plaintiff, who is proceeding pro se, is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

[3] On page two, Plaintiff sates "Bryan Phillips replaced Stuart Sherman, Warden CSATF, Fed.R.Civ.P. 17(a)." Plaintiff nonetheless identified Sherman as a party to this action at page three under the heading "PARTIES," meaning Sherman has not been "replaced" by Phillips in this action. Moreover, Rule 17(a) concerns Real Parties in Interest and is not applicable.

5

1  (*Id.*) Plaintiff asserts Leahy is responsible for this "omission to correct constitutional violations"
2  and was aware and on notice from his grievance. (*Id.*) Plaintiff alleges that on June 17, 2019, he
3  sent a "Letter Coleman Attorney's of above." (*Id.*) Plaintiff asserts a meeting with the Inmate
4  Advisory Committee ADA Chairman and Defendant Smith resulted in medically qualified ADA
5  inmates being allowed ice and ice water if temperatures reached 90 degrees "stage two." (*Id.*)
6  Plaintiff alleges that on July 17, 2019, he "received Request from Captain Williams without
7  response" as required by regulation. Plaintiff states Williams is responsible for "inaction &
8  omissions to correct deprivations & can respond …." (*Id.*)

9  Plaintiff contends he filed a "Group Class" grievance on August 29, 2019, regarding
10 portable swamp coolers, water fountains, and cooling measures. (Doc. 26 at 5.) On September 27,
11 2019, Plaintiff received a first level response from Defendants Rocha and Marsh, granting staff
12 compliance "May through Oct. 31st or whenever temp warrant." (*Id.*) The response advised water
13 fountains were working properly and denied Plaintiff's request for portable swamp coolers. (*Id.*)
14 Plaintiff contends Rocha and Marsh are responsible for and can respond to "inaction of policy
15 omitted for heat & ADA violation." (*Id.*)

16 On October 15, 2019, Plaintiff replied to the first level response, stating the water
17 fountains were not producing cold water, and were corroded and in need of repair. (*Id.* at 5-6.) He
18 states this is health hazard, the temperatures in the dorm areas were higher than the open dayroom
19 due to overcrowding and the correctional officers had denied "equal cooling." (*Id.* at 6.) Plaintiff
20 alleges discrimination and states the heat plan was not being adhered to due to a lack of training
21 for staff. (*Id.*)

22 The December 10, 2019, the second level response by Defendant Collins on behalf of the
23 warden indicated the facility was following the heat plan, the water fountains were working
24 properly, and denied portable swamp coolers. (Doc. 26 at 6.) Plaintiff contends "Collins and
25 Warden Sherman" are responsible for and can respond to omissions to correct policy of
26 inadequate heat conditions and constitutional violations. (*Id.*) Plaintiff replied on December 17,
27 2019, expressing his dissatisfaction. (*Id.*)
28

Plaintiff contends that on January 3, 2020, the warden posted a memorandum concerning the wastewater treatment plan at California State Prison, Corcoran and a sewage overflow or spill, stating the project or repair did not involve SATF. (Doc. 26 at 6.) Plaintiff appears to allege such sewage water is "used for drinking water." (*Id.*)

On April 2, 2020, Plaintiff received the third level response from the Office of Appeals stating that due to time constraints, the second level response would serve as the final decision. (Doc. 26 at 6-7.) The document was not signed. (*Id.*) Plaintiff contends the Office of Appeals "responds for" the Director of Adult Institutions "who responds to CDCR Secretary who is responsible for all prisons including SATF." (*Id.* at 7.) Plaintiff states his grievance to the third level was timely and that the Office of Appeals response was a "false statement to allow continual cruel punishments." (*Id.*)[4]

On January 8, 2021, Plaintiff filed an appeal in the Fifth District Court of Appeal; the appeal was "denied" on April 27, 2021. (Doc. 26 at 7.) Plaintiff states the action he filed in the Northern District on May 27, 2019, was transferred to this Court on July 17, 2019, and assigned case number 1:19-cv-00970-DAD-GSA. (Doc. 26 at 7.) That action was closed, and the Clerk responded to Plaintiff's later request for a "structural injunction, three judge-panel" on August 27, 2021, and included instructions for filing a complaint "with U.S.N.D." (*Id.*)

On June 28, 2022, Plaintiff submitted a grievance concerning black mold in the facility's toilet and shower areas and dorm areas. (Doc. 26 at 7.) He noted overcrowding and a lack of an appropriate number of toilets for the population and for those with disabilities. (*Id.* at 7-8.) Plaintiff contends he was interviewed by Defendant Florez on August 25, 2022. (*Id.* at 8.) Florez stated there was no black mold in the shower areas, but the area needed cleaning. (*Id.*) While Florez was present, other inmates called out to him that there was "mold … up here on wall next to" their bunks. (*Id.*) Plaintiff contends Florez was on notice and that his omission to correct constitutional deprivations is discriminatory. (*Id.*)

---

[4] Following these allegations, Plaintiff indicates he filed a habeas corpus action in the state superior court on June 24, 2020, and that court ordered a response before denying the petition. (Doc. 26 at 7.) He does not explain how the habeas petition is relevant to this action. Plaintiff also states Defendant Cisneros became the warden at SATF in September 2020. (*Id.*)

On August 31, 2022, Plaintiff alleges he "received DECISION Black MOLD, denied S. Smith, A.W. Reviewing Authority for Warden [Cisneros]," denying his grievance concerning black mold. (Doc. 26 at 8.) It stated staff did not violate policy. (*Id*.) Plaintiff asserts Defendants Smith and Cisneros were on notice and took no action. (*Id*.) Plaintiff appealed to the next level, alleging the response was false, that Defendant Florez "interviewed C-Sec. Yet! went to other Sec's as" building cameras would show, and Florez did not have protective equipment or gear, did not take any took kit or swabs for samples and no video was taken. (*Id*.) Plaintiff's appeal was denied by the Office of Appeals on December 10, 2022, with regard to black mold or mildew, lack of housekeeping, and toilet per inmate ratios in light of inmate population. (*Id*. at 8-9.) Plaintiff contends the grievance was "granted" because the Office of Appeal was "unable to determine by a [preponderance] of evidence that all policies are being followed." (*Id*. at 9.)

On January 23, 2023, Plaintiff filed a health request for cough drops and antibiotics because ten days of rain caused black mold to "infect A-Section or by virus." (Doc. 26 at 9.) Plaintiff was seen for a sore throat and cough and was provided medication. (*Id*.)

On February 13, 2023, Plaintiff "gave request" to a building officer for two work orders to replace air filters in swamp coolers, remove dust from pipes and air ducts, registers and vents, and from windows and the ceiling. (Doc. 26 at 9.) He notes almost all inmates in that section were coughing and had sore throats from dust or black mold in the "roof infrastructure with other pathogens." (*Id*.) Plaintiff added an affidavit with 19 signatures to that grievance on February 20, 2023. (*Id*.) The grievance was denied on March 14, 2023, by "R. Morales Reviewing Authority for constitutional violations for Warden Phillips." (*Id*.) Plaintiff contends Defendants "can respond" and are responsible for omissions to correct health and safety policy violations. (*Id*.)

On March 19, 2023, Plaintiff responded to the denial of the grievance, alleging feather dusters on long poles used by porters cannot clean years of dirt, soot, and carbon monoxide build up, and that a vacuum or power wash was required to correct the problem. (Doc. 26 at 9-10.) On April 11, 2023, Plaintiff sent a letter to "OSAH [sic] Washington CD" requesting an investigation. (*Id*.) That agency responded that they had forwarded his request to "CAL/OSHA" in Oakland, California. (*Id*.)

In a May 31, 2023, Office of Appeals response, Director Moseley granted "IV. REMEDY" and indicated SATF "shall open a new grievance log number, gather & preserve all relevant information, & provide a response" concerning the subject matter of the grievance and assertions of inadequate cleaning. (Doc. 26 at 10.) Plaintiff contends "Plant Ops came" and cleaned the exhaust vents, openings and overhead lights. (*Id*.) When Plaintiff asked why the overhead water pipes were not cleaned, a stationary engineer stated that was a job for "plumbing" and they were "HVAC." (*Id*.) Plaintiff asked about vacuuming the ceiling because "they had" a vacuum cleaner on an electric lift. (*Id*.) Plaintiff contends the engineer stated that "was another" work order. (*Id*.)

On July 3, 2023, Plaintiff received a second level response to the grievance from Defendant Marsh. (Doc. 26 at 10.) It was granted as to "IV. REMEDY," and noted a work order was generated and completed on June 23, 2023, for "the cleaning of the ducting system." (*Id*.) Plaintiff states Marsh denied "complete action" and that Marsh and Phillips "can respond for inaction to correct policy effecting safety & health." (*Id*.)

**C. Plaintiff's Claims**

Plaintiff alleges three causes of action. The first cause of action is titled "(Cruel and Unusual Punishment-Deliberate Indifference Heat Conditions Water and Mold"). (Doc. 26 at 10.) The second cause of action is titled "(Fourteenth Amendment Equal Protection and Eighth Amendment Conditions)." (*Id*. at 11.) The second cause of action is titled "(Fourteenth Amendment Equal Protection and Eighth Amendment Conditions)." (*Id*. at 12.) The third cause of action is titled "(Fourteenth Amendment's Equal Protection Title II ADA, Rehabilitation Act"). (*Id*.)

1. First Cause of Action

Plaintiff contends Defendants have violated his rights "to have on-going intentionally [inflicted severe] physical pain & suffering against plaintiff for the purpose of violating Eighth Amendment." (Doc. 26 at 10-11.) He asserts Defendants are deliberately indifferent to the "amount of Air per Cubic feet per minute design for specific amount of" beds per individual, including those with disabilities. (*Id*. at 11.) He alleges a denial of access to adequately ventilated

9

facilities and cooling measures, a lack of open windows, and the presence of black mold. (*Id*.) Plaintiff alleges he has been denied adequate drinking water, and that the water "may be" contaminated. (*Id*.) Plaintiff states he suffers from headaches, dizziness and coughing due to the heat index, condensation and mold, and exposure over a period of four years. (*Id*.)

### 2. Second Cause of Action

Plaintiff asserts Defendants have violated his "& others similarly situated" rights guaranteed by the Eighth and Fourteenth Amendments "for adequate shelter, that does now threaten physical harm, without facing ignored or partially façade non-compliance." (Doc. 12 at 11.) He contends Defendants have denied "due process with its own remedies that are not adequate or reasonably related to any penological interest where deprivations cause imminent danger from over-crowding design capacity is primary force for conditions." (*Id*.)

### 3. Third Cause of Action

Plaintiff alleges a violation of his Americans with Disabilities Act ("ADA") rights and rights under the Rehabilitation Act ("RA") and those of "others similarly situated." (Doc. 26 at 11-12.) He contends Defendants' conduct violates section 1983 "because that conduct constitutes deliberate indifference to plaintiff & others serious physical harm, & in violation of Constitutional rights to execute their duties consistent with state and federal law, & entitling plaintiffs to Temporary and Permanent Injunction & Enforcement & Protection." (*Id*. at 12.)

### D. Analysis of Plaintiff's Claims

As an initial matter, the Court notes it provided Plaintiff with the legal standards applicable to the claims asserted by Plaintiff in his first amended complaint: Eighth Amendment conditions of confinement claims and equal protection clause violations arising under the Fourteenth Amendment. (Doc. 25 at 8-11.) The Court advised Plaintiff that claims based solely on a defendant's violation of prison rules and policies do not give rise to a section 1983 claim. (*Id*. at 13.) Plaintiff was also advised that "[i]nmates lack a constitutional right to a grievance procedure, and there are no constitutional requirements regarding how a grievance system is operated, even if plaintiff believes the process to be unfair or not accurate" and that he "cannot state a claim against any named defendant for an improper denial of his grievances." (*Id*. at 13-

14.)

The Court construes the second amended complaint to assert the following claims: Eighth Amendment conditions of confinement claims against all Defendants in Claim One; violations of the Equal Protection Clause of the Fourteenth Amendment against all Defendants in Claim Two; and violations of the ADA and RA against all Defendants in Claim Three.

<u>Claim One – Eighth Amendment Conditions of Confinement</u>

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment requires that prison officials ensure that inmates receive adequate food, clothing, shelter, and medical care. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (citations omitted).

A plaintiff who challenges conditions of confinement must essentially make two showings to demonstrate a violation of the Eighth Amendment. *Hearns*, 413 F.3d at 1042. First, the plaintiff must "make an objective showing that the deprivation was 'sufficiently serious to form the basis for an Eighth Amendment violation." *Id*. (quoting *Wilson*, 501 U.S. at 298). Second, the plaintiff must make a subjective showing that the prison officials at issue acted "with a sufficiently culpable state of mind." *Id*. A plaintiff must show that the prison officials had actual knowledge of plaintiff's basic human needs and deliberately refused to meet those needs. *Id*. Finally, a plaintiff must also demonstrate that the prison officials caused the deprivation about which he complains. *See Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).

As Plaintiff has previously been advised, to the extent his second amended complaint can be interpreted to assert a claim based upon any defendants' denial of his grievances and his belief the denials were improper, this does not state a claim upon which relief can be granted. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

Plaintiff was previously advised of the requirements for stating an Eighth Amendment conditions of confinement claim: he must show that prison officials acted with deliberate

11

indifference. *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). The objective prong of the deliberate indifference test requires Plaintiff to allege a "sufficiently serious" violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective prong of the deliberate indifference test requires that a plaintiff show prison officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Labatad*, 714 F.3d at 1160. It is not enough that the prison official only "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (internal quotation marks & citation omitted). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

Here, liberally construing the second amended complaint, Plaintiff plausibly alleges Eighth Amendment conditions of confinement claims against the named Defendants. Plaintiff alleges sufficiently serious violations in the form of inadequate ventilation and cooling, and the presence of black mold. *Farmer*, 511 U.S. at 834; *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) (holding that the plaintiffs' allegations regarding inadequate ventilation was sufficient to constitute an objectively serious harm); *Knight v. Elko County*, No. 3:22-cv-00433-ART-CSD, 2022 WL 20471410, at *4 (D. Nev. Dec. 5, 2022) (finding colorable Eighth Amendment conditions of confinement claims at screening for failure to address ongoing black mold problem); *Johnson v. Gentry*, No. 2:19-cv-00232-MMD-NJK, 2019 WL 13195239, at *4 (D. Nev. Feb. 12, 2019) (finding "colorable conditions of confinement claims against Defendants Williams, Gentry, Cox, and Dzurenda because they allegedly knew of unsafe conditions (a filthy and vermin-infested cell and black mold in the showers) but refused to remedy the situation). At this stage of the proceedings, the Court also finds Plaintiff's assertions concerning Defendants' knowledge of the risk to be sufficient. Plaintiff has alleged conditions involving obviousness and

asserts he submitted several grievances on these issues, some of which were acted upon in a partial capacity or resulted in an interview and inspection. *Farmer*, 511 U.S. at 842; *Wallis*, 70 F.3d at 1077; *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013 ("[O]bviousness is not measured by what is obvious to a layman, but rather by what would be obvious in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved" [citations omitted]); *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) ("acquiescence or culpable indifference" may suffice to show that a supervisor "personally played a role in the alleged constitutional violations").

In sum, liberally construing the second amended complaint, Plaintiff plausibly alleges Eighth Amendment conditions of confinement claims against the named Defendants.

## Claim Two: Fourteenth Amendment Equal Protection Clause

Plaintiff was advised of the legal standards for a Fourteenth Amendment equal protection claim in this Court's previous screening order. (Doc. 25 at 10-11.) Plaintiff was advised that to state an equal protection claim in the absence of a suspect classification, he must allege that (1) he is a member of an identifiable class, (2) he was intentionally treated different from others similarly situated, and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S.562, 564 (2000). Further, he must establish evidence of discriminatory intent. *Washington v. Davis*, 426 U.S. 229, 239-240 (1976).

Liberally construed, the second amended complaint identifies Plaintiff as a disabled inmate and a member of an identifiable class. While Plaintiff asserts that he was treated differently than others similarly situated, it is unclear from the second amended complaint how this is true as all inmates in the affected building would have been subjected to the same heat and lack of cooling measures, the same allegedly ineffective and dirty ventilation and water fountain systems, and the same black mold present in the shower facility and bunk areas. The fact Plaintiff may have been *affected* differently by those same conditions is not the same as being "treated differently." Finally, Plaintiff makes no assertion that there is no rational basis for the difference in treatment.

In sum, Plaintiff fails to state cognizable Fourteenth Amendment equal protection

violation claims against any Defendant. For the foregoing reasons, the Court finds that granting Plaintiff leave to amend these claims would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

<u>Claim Three: ADA and RA</u>

Plaintiff asserts that violations of the ADA and RA. Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); *Weinrich v. L.A. County Metro Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.), cert. denied, 522 U.S. 971 (1997). The Supreme Court has held that Title II of the ADA applies to state prisons. *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Lee v. City of L.A.*, 250 F.3d 668, 691 (9th Cir. 2001). "Generally, public entities must 'make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" *Pierce v. County of Orange*, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)). The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally funded programs. *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002).

A plaintiff may bring a direct suit under either the RA or Title II of the ADA against a municipality in which ". . . the public entity is liable for the vicarious acts of its employees." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001). Subsequent courts have extended this holding to other types of public entities, including the California Department of Corrections and Rehabilitation. *See, e.g.*, *Orr v. Cal. Highway Patrol*, No. No. 2:14-585 WBS EFB, 2015 WL 848553 at *16 (E.D. Cal. Feb.26, 2015) ("Public entities are vicariously liable for the acts of their employees under both acts"). "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). But a state official may be sued in his or her official capacity for injunctive relief under the ADA. *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003). A plaintiff

may proceed under Title II of the ADA for monetary damages against defendants in their official capacities, but only if the plaintiff shows discriminatory intent. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo County, Ariz*, 609 F.3d 1011, 1021 (9th Cir. 2010); *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *Weinrich*, 114 F.3d at 978. Although "[t]he ADA prohibits discrimination because of disability," it does not provide a remedy for "inadequate treatment for disability." *Simmons*, 609 F.3d at 1022 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners .... The ADA does not create a remedy for medical malpractice")).

Liberally construed, the second amended complaint fails to state an ADA/RA claim against any named Defendant. Plaintiff alleges he is disabled and is otherwise qualified to participate in or receive the benefit of some public entity's services,[5] programs, or activities, and he was excluded from participation in or denied those services, programs, or activities. He fails to allege, however, that such exclusion or denial was *by reason of* his disability. Based upon the factual allegations of Plaintiff's second amended complaint, it cannot be inferred from any facts alleged that the denial occurred "by reason of his disability." *Simmons*, 609 F.3d at 1021; *see also Petersen v. California Department of Corrections & Rehabilitation*, No. 18-CV-2473 JLS (MSB), 2020 WL 7318906, at *6 (S.D. Cal. Dec. 11, 2020) (dismissing ADA/RA claims where plaintiff asserting transfer to upper tier assignment failed to allege the transfer was made by reason of his disability); *Mills v. California*, No. CV 20-2846-CBM-KK, 2020 WL 4928302, at

---

[5] "The term 'services, programs, or activities' as used in the ADA is ... broad, 'bringing within its scope anything a public entity does.'" *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014) (quoting *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)).

*5 (C.D. Cal. June 29, 2020) (recommending dismissal where "Plaintiff fails to allege he was discriminated against solely by reason of his disability"), recommendation adopted 2020 WL 4927490 (C.D. Cal. Aug. 21, 2020); *Wilson v. California Dept. of Corrections and Rehabilitation*, No. CIV S-06-1391 FCD EFB P, 2007 WL 738711, at *1 (E.D. Cal. Mar. 7, 2007) ("Plaintiff fails to allege that he is being intentionally discriminated against as a result of his disability and therefore fails to state a claim under the ADA").

The ADA is not violated by a prison simply failing to tend to the medical needs of disabled prisoners because the ADA does not create a remedy for medical malpractice. Similarly, the ADA is not violated here because SATF's failure to address the ventilation, heating and cooling needs and presence of black mold which may amount to negligence does not give to an ADA violation. *See Bryant*, 84 F.3d at 249. The actions or inactions of which Plaintiff complains are more appropriately alleged as Eighth Amendment conditions of confinement claims and have been asserted in Plaintiff's Claim One.

In sum, Plaintiff fails to state cognizable ADA/RA claims against any Defendant. For the reasons set forth above, the Court finds that granting Plaintiff leave to amend these claims would be futile. *Hartmann*, 707 F.3d at 1130.

### E.  Screening Summary

The Court finds Plaintiff's second amended complaint plausibly alleges Eighth Amendment conditions of confinement claims. However, the Court has also determined that amendment would be futile as to Plaintiff's ADA/RA and Fourteenth Amendment claims. As a result, the Court will recommend this action proceed only on Plaintiff's Eighth Amendment conditions of confinement claims.

### V.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** that:

1. This action **PROCEED** *only* on Plaintiff's Eighth Amendment conditions of confinement claims against the named defendants; and
2. The remaining claims in Plaintiff's second amended complaint against any defendant be **DISMISSED** with prejudice.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 10, 2024**        /s/ *Sheila K. Oberto*
                         UNITED STATES MAGISTRATE JUDGE

17