UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W. WILSON,<br><br>              Plaintiff,<br><br>      v.<br><br>STUART SHERMAN, et al.,<br><br>              Defendants. | Case No.: 1:22-cv-00874-JLT-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE EXHAUSTION**<br><br>(Doc. 50)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff David W. Wilson is appearing pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

## I.    INTRODUCTION

This action proceeds on Plaintiff's Eighth Amendment conditions of confinement claims against Defendants Cisneros, Collins, Florez, Leahy, Lines, Marsh, Morales, Phillips, Rocha, Sherman, Smith and Williams.

On March 27, 2025, Defendants filed a motion for summary judgment alleging Plaintiff failed to exhaust his administrative remedies on his claims against Defendants Leahy and Lines. (Doc. 50.) Plaintiff filed an opposition (Doc. 56), and Defendants replied (Doc. 59).[1]

---

[1] In arriving at these findings and recommendations, the Court reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers totaling more than 1,100 pages filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not

## II.    APPLICABLE LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

### B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

---

consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy; and (2) that the plaintiff failed to exhaust that remedy. *Albino,* 747 F.3d at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). "However, … the ultimate burden of proof remains with the defendant." *Id.*

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

3

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*, 747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

### C.  CDCR Grievance Process

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff if it has an adverse effect on prisoner health, safety, or welfare. Prior to June 2020, the grievance process involved three levels of review. Cal. Code Regs. tit. 15, §§ 3084-85. As of June 1, 2020, prisoners are required to follow a two level review procedure. Cal. Code Regs. tit. 15, §§ 3480-3487. Compliance with 42 U.S.C. § 1997e(a) requires California-state prisoners to utilize CDCR's grievance process to exhaust their claims prior to filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 85-86.

### III.    SUMMARY OF THE PARTIES' CONTENTIONS

***Defendants' Motion for Summary Judgment (Doc. 50)***

Defendants contend Plaintiff's 22 non-health care related grievances submitted between June 6, 2019, and July 18, 2023, including 5 grievances alleging excessively hot temperatures or black mold, do not identify Defendant Leahy or Defendant Lines. Specifically, Defendants contend the undisputed facts show that an administrative grievance process was available to Plaintiff but that Plaintiff failed to exhaust his claims against Defendants Leahy and Lines because none of the grievances submitted put the prison on notice of Defendants Leahy and

Lines's alleged involvement.[2] Defendants maintain that because Plaintiff's grievances do not name or describe any action by Leahy and Lines, they are entitled to summary judgment.

### *Plaintiff's Opposition to Defendants' Summary Judgment Motion (Doc. 56)[3]*

Plaintiff contends affidavits in support of Defendants' motion were "made in bad faith, and solely for the purpose of delay." He alleges he "sent three 3 [Request] for Interview(s) Notice" on June 6, 2019, to Defendants Sherman, Williams, and Lines. He contends that on June 11, 2019, "Jason responds for Plant Ops. J. Lines" and asserts that "Chief Lines is responsible." Next, Plaintiff contends that on June 17, 2019, Defendant Leahy falsely responded to a submission by Plaintiff concerning stand up fans and asserts "Leahy responsible omission to correct constitutional violations & aware by NOTICE grievance …." Plaintiff contends that Defendants rely on "inadmissible" evidence to support their motion because "3 [grievances] are in herein Exhibit's, and two are the same."[4]

### *Defendants' Reply (Doc. 59)*

Defendants contend Plaintiff's CDCR 22 form including the names "J. Leahy" and "Jan Lines" in Section D of the form does not create a genuine issue of material fact because the form is not authenticated "as having been included in the appeals package to the Office of Appeal (OOA) associated with Appeal Log No. 1916131/SATF-19-05457, and Plaintiff does not contend the form was submitted for OOA review. Defendants also contend Plaintiff neither complied with Local Rule 260(b) requiring him to respond to their Statement of Undisputed Facts, nor did he "produce his own Statement of Disputed Facts as it relates to" exhaustion and his claims against

---

[2] Defendants acknowledge that Plaintiff "used the grievance process to exhaust his administrative remedies for his claims against Defendants Williams, Collins, Sherman, Cisneros, Rocha, Marsh, Florez, Smith, Morales, and Phillips. (Doc. 50-1 at 12.)

[3] The Court does not summarize Plaintiff's arguments concerning the remaining Defendants. The summary judgment motion concerns *only* Defendants Leahy and Lines, and Defendants acknowledge Plaintiff's claims concerning the other Defendants were exhausted.

[4] Plaintiff's opposition repeatedly asserts that Defendants' "use Exhaustion and Declaration of Howard Mosely …in Bad Faith False" and for the purpose of delay. (*See* Doc. 56, generally.) It is unclear how Defendants' submission of the Moseley Declaration amounts to bad faith or how it amounts to a purposeful delay.

5

Leahy and Lines. Defendants state that because Plaintiff failed to proffer admissible evidence showing that prison officials were on notice of his claims against Defendants Leahy and Lines, they are entitled to summary judgment. Alternatively, Defendants request an evidentiary hearing should the Court determine that a genuine dispute of material fact exists.

**IV.    PLAINTIFF'S OPERATIVE COMPLAINT**

Upon screening of the second amended complaint, this Court summarized Plaintiff's factual allegations as follows:

> Plaintiff contends that on June 6, 2019, he sent three requests for interviews to Defendants Sherman, Williams and Lines "to correct constitutional deprivations." (Doc. 26 at 3.) These requests concerned swamp coolers, and ventilation issues in Building 1, Facility B. (*Id.* at 3-4.) Plaintiff alleges Defendant Collins responded for Defendant Lines on June 11, 2019, indicating a work order was in the system and Plaintiff should resubmit "to custody." (*Id.* at 4.) Plaintiff responded the following day, indicating he was dissatisfied. (*Id.*) On June 12, 2019, Plaintiff filed a health request and was seen by a medical doctor for dizziness and headaches attributable to the heat. (*Id.*)
>
> Plaintiff contends that on June 14, 2019, a counselor responded for the warden stating SATF has an institutional heat plan which will continue to be followed. (Doc. 26 at 4.) Plaintiff contends this response was false and that the heat plan is not recorded accurately, resulting in a denial of cooling measures. (*Id.*) Plaintiff asserts the warden is responsible for policy inaction and can respond to constitutional violations. (*Id.*)
>
> On June 17, 2019, Defendant Leahy indicated a work order had been submitted to have plant operations look at the swamp coolers in Building 1, plant operations was aware the swamp coolers were not working and the parts to fix the problem were on order. (Doc. 26 at 5.) Leahy also indicated portable swamp coolers were not available and that stand-up fans were provided. (*Id.*) Plaintiff contends this response is false because the stand-up fans were "diverted" by staff. (*Id.*) Plaintiff asserts Leahy is responsible for this "omission to correct constitutional violations" and was aware and on notice from his grievance. (*Id.*) Plaintiff alleges that on June 17, 2019, he sent a "Letter Coleman Attorney's of above." (*Id.*) Plaintiff asserts a meeting with the Inmate Advisory Committee ADA Chairman and Defendant Smith resulted in medically qualified ADA inmates being allowed ice and ice water if temperatures reached 90 degrees "stage two." (*Id.*) Plaintiff alleges that on July 17, 2019, he "received Request from Captain Williams without response" as required by regulation. Plaintiff states Williams is responsible for "inaction & omissions to correct deprivations & can respond …." (*Id.*)
>
> Plaintiff contends he filed a "Group Class" grievance on August 29, 2019, regarding portable swamp coolers, water fountains, and

6

cooling measures. (Doc. 26 at 5.) On September 27, 2019, Plaintiff received a first level response from Defendants Rocha and Marsh, granting staff compliance "May through Oct. 31st or whenever temp warrant." (*Id*.) The response advised water fountains were working properly and denied Plaintiff's request for portable swamp coolers. (*Id*.) Plaintiff contends Rocha and Marsh are responsible for and can respond to "inaction of policy omitted for heat & ADA violation." (*Id*.)

On October 15, 2019, Plaintiff replied to the first level response, stating the water fountains were not producing cold water, and were corroded and in need of repair. ([Doc. 26] at 5-6.) He states this is health hazard, the temperatures in the dorm areas were higher than the open dayroom due to overcrowding and the correctional officers had denied "equal cooling." (*Id*. at 6.) Plaintiff alleges discrimination and states the heat plan was not being adhered to due to a lack of training for staff. (*Id*.)

The December 10, 2019, the second level response by Defendant Collins on behalf of the warden indicated the facility was following the heat plan, the water fountains were working properly, and denied portable swamp coolers. (Doc. 26 at 6.) Plaintiff contends "Collins and Warden Sherman" are responsible for and can respond to omissions to correct policy of inadequate heat conditions and constitutional violations. (*Id*.) Plaintiff replied on December 17, 2019, expressing his dissatisfaction. (*Id*.)

Plaintiff contends that on January 3, 2020, the warden posted a memorandum concerning the wastewater treatment plan at California State Prison, Corcoran and a sewage overflow or spill, stating the project or repair did not involve SATF. (Doc. 26 at 6.) Plaintiff appears to allege such sewage water is "used for drinking water." (*Id*.)

On April 2, 2020, Plaintiff received the third level response from the Office of Appeals stating that due to time constraints, the second level response would serve as the final decision. (Doc. 26 at 6-7.) The document was not signed. (*Id*.) Plaintiff contends the Office of Appeals "responds for" the Director of Adult Institutions "who responds to CDCR Secretary who is responsible for all prisons including SATF." (*Id*. at 7.) Plaintiff states his grievance to the third level was timely and that the Office of Appeals response was a "false statement to allow continual cruel punishments." (*Id*.)

On January 8, 2021, Plaintiff filed an appeal in the Fifth District Court of Appeal; the appeal was "denied" on April 27, 2021. (Doc. 26 at 7.) Plaintiff states the action he filed in the Northern District on May 27, 2019, was transferred to this Court on July 17, 2019, and assigned case number 1:19-cv-00970-DAD-GSA. ([*Id*.].) That action was closed, and the Clerk responded to Plaintiff's later request for a "structural injunction, three judge-panel" on August 27, 2021, and included instructions for filing a complaint "with U.S.N.D." (*Id*.)

On June 28, 2022, Plaintiff submitted a grievance concerning black mold in the facility's toilet and shower areas and dorm areas. (Doc.

26 at 7.) He noted overcrowding and a lack of an appropriate number of toilets for the population and for those with disabilities. (*Id*. at 7-8.) Plaintiff contends he was interviewed by Defendant Florez on August 25, 2022. (*Id*. at 8.) Florez stated there was no black mold in the shower areas, but the area needed cleaning. (*Id*.) While Florez was present, other inmates called out to him that there was "mold … up here on wall next to" their bunks. (*Id*.) Plaintiff contends Florez was on notice and that his omission to correct constitutional deprivations is discriminatory. (*Id*.)

On August 31, 2022, Plaintiff alleges he "received DECISION Black MOLD, denied S. Smith, A.W. Reviewing Authority for Warden [Cisneros]," denying his grievance concerning black mold. (Doc. 26 at 8.) It stated staff did not violate policy. (*Id.*) Plaintiff asserts Defendants Smith and Cisneros were on notice and took no action. (*Id*.) Plaintiff appealed to the next level, alleging the response was false, that Defendant Florez "interviewed C-Sec. Yet! went to other Sec's as" building cameras would show, and Florez did not have protective equipment or gear, did not take any took kit or swabs for samples and no video was taken. (*Id*.) Plaintiff's appeal was denied by the Office of Appeals on December 10, 2022, with regard to black mold or mildew, lack of housekeeping, and toilet per inmate ratios in light of inmate population. (*Id*. at 8-9.) Plaintiff contends the grievance was "granted" because the Office of Appeal was "unable to determine by a [preponderance] of evidence that all policies are being followed." (*Id*. at 9.)

On January 23, 2023, Plaintiff filed a health request for cough drops and antibiotics because ten days of rain caused black mold to "infect A-Section or by virus." (Doc. 26 at 9.) Plaintiff was seen for a sore throat and cough and was provided medication. (*Id*.)

On February 13, 2023, Plaintiff "gave request" to a building officer for two work orders to replace air filters in swamp coolers, remove dust from pipes and air ducts, registers and vents, and from windows and the ceiling. (Doc. 26 at 9.) He notes almost all inmates in that section were coughing and had sore throats from dust or black mold in the "roof infrastructure with other pathogens." (*Id*.) Plaintiff added an affidavit with 19 signatures to that grievance on February 20, 2023. (*Id*.) The grievance was denied on March 14, 2023, by "R. Morales Reviewing Authority for constitutional violations for Warden Phillips." (*Id*.) Plaintiff contends Defendants "can respond" and are responsible for omissions to correct health and safety policy violations. (*Id*.)

On March 19, 2023, Plaintiff responded to the denial of the grievance, alleging feather dusters on long poles used by porters cannot clean years of dirt, soot, and carbon monoxide build up, and that a vacuum or power wash was required to correct the problem. (Doc. 26 at 9-10.) On April 11, 2023, Plaintiff sent a letter to "OSAH [sic] Washington CD" requesting an investigation. (Id.) That agency responded that they had forwarded his request to "CAL/OSHA" in Oakland, California. (*Id*.)

In a May 31, 2023, Office of Appeals response, Director Moseley

8

granted "IV. REMEDY" and indicated SATF "shall open a new grievance log number, gather & preserve all relevant information, & provide a response" concerning the subject matter of the grievance and assertions of inadequate cleaning. (Doc. 26 at 10.) Plaintiff contends "Plant Ops came" and cleaned the exhaust vents, openings and overhead lights. (*Id.*) When Plaintiff asked why the overhead water pipes were not cleaned, a stationary engineer stated that was a job for "plumbing" and they were "HVAC." (*Id.*) Plaintiff asked about vacuuming the ceiling because "they had" a vacuum cleaner on an electric lift. (*Id.*) Plaintiff contends the engineer stated that "was another" work order. (*Id.*)

On July 3, 2023, Plaintiff received a second level response to the grievance from Defendant Marsh. (Doc. 26 at 10.) It was granted as to "IV. REMEDY," and noted a work order was generated and completed on June 23, 2023, for "the cleaning of the ducting system." (*Id.*) Plaintiff states Marsh denied "complete action" and that Marsh and Phillips "can respond for inaction to correct policy effecting safety & health." (*Id.*)

(*See* Doc. 29 at 5-9, fns. omitted.) The Court determined Plaintiff stated plausible Eight Amendment conditions of confinement claims against all named Defendants but failed to state a cognizable Fourteenth Amendment equal protection violation or an Americans with Disabilities Act/Rehabilitation Act violation. (*Id.* at 10-16.) The Court recommended that this action proceed only on Plaintiff's Eighth Amendment conditions of confinement claims and that the remaining claims be dismissed with prejudice. (*Id.* at 16-17.) The recommendations were adopted by District Judge Jennifer L. Thurston. (*See* Doc. 31.)

## V.    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. Before August 1, 2008, the Office of the Appeals (OOA) received, reviewed, and maintained all offender grievances that were appealed to the final level of review whether related to health care issues or not. (Moseley Decl. ¶ 1.)

2. Since August 1, 2008, the Inmate Correspondence and Appeals Branch (ICAB) receives, reviews, and maintains all health care related appeals (medical, dental, and mental health) while the OOA receives, reviews, and maintains all appeals not related to health care issues. (Moseley Decl. ¶ 2.)

3. When an appeal is received by the OOA, it is assigned a tracking log number and entered into a computer system. (Moseley Decl. ¶ 3.)

9

4. An "Appeal History Report" is available in the computer system for each offender. The Appeal History Report includes the following information: the offender's first and last name, the offender's CDCR number, the appeal log number, the appeal issue, the date the appeal was received, the underlying grievance log number, if any (which includes the acronym of the institution or parole region where the underlying grievance arose), the date the appeal was closed, and the final disposition of the appeal. (Moseley Decl. ¶ 3.)

5. All offender appeals are reviewed by the OOA and screened in or screened out. (Moseley Decl. ¶ 4.)

6. An appeal is screened in (answered substantively) if it complies with the governing regulations. An appeal is screened out (not answered substantively) if it does not comply with the governing regulations. (Moseley Decl. ¶ 4.)

7. The offender is informed of the reason for the screen out and how the deficiency can be cured, if the regulations provide for a cure. (Moseley Decl. ¶ 4.)

8. The Appeal History Report includes appeals that were screened in or screened out; if screened out, the report includes the reason for the screen-out. (Moseley Decl. ¶ 4.)

9. Decisions by the OOA represent the final level of review in the Department's grievance and appeal process and are rendered on behalf of the Secretary of the Department. (Moseley Decl. ¶ 5.)

10. If filing a grievance before June 1, 2020, an offender was required to follow the procedures set forth in Title 15, sections 3084- 3085; between June 1, 2020, and December 31, 2021, an offender was required to follow the procedures set forth in Title 15, sections 3480-3487; and beginning January 1, 2022, offenders are required to follow the procedures set forth in Title 15, sections 3480-3485. (Moseley Decl. ¶ 6.)

11. CDCR's administrative process provides inmates and parolees the right to grieve or appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect

10

upon his or her health, safety, or welfare." (Cal. Code Regs., tit. 15, § 3084.1(a) (2019).)

12. Before June 1, 2020, CDCR's administrative grievance process had three levels of review: (1) a first level staff response; (2) a second level appeal to the institution head or designee; and (3) a final level of appeal at the OOA. (Cal. Code Regs. tit. 15, §§ 3084.7, 3084.8 (2019).)

13. To initiate the grievance process under sections 3084-3085 of Title 15, the inmate or parolee was required to submit a CDCR 602 inmate/parolee appeal form to the appeals coordinator's office at his or her institution for receipt and processing. (Cal. Code Regs. tit. 15, § 3084.2(a)-(c) (2019).)

14. The inmate or parolee was limited to one issue or related set of issues per each CDCR 602 form. (Cal. Code Regs. tit. 15, § 3084.2(a)(1) (2019).)

15. The inmate or parolee was also required to "list all staff member(s) involved and [ ] describe their involvement in the issue." Specifically, "the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal." (Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2019).)

16. The inmate or parolee was also required to "state all facts known and available to him/her regarding the issue being appealed" at the time of submitting the 602 inmate/parolee appeal form. (Cal. Code Regs. tit. 15, § 3084.2(a)(4) (2019).)

17. If the grievance was not resolved at the first formal level, the inmate could seek review at the second formal level by the institution's head or regional parole administrator, or their designee. (Cal. Code Regs. tit. 15, § 3084.5(e)(1) (2019).)

18. If the inmate remained dissatisfied with the decision at the second level, he could seek a decision at the final level of review by the OOA. (Cal. Code Regs. tit. 15, § 3084.5(e)(2) (2019).

19. Failure to pursue an appeal through the final level constitutes a failure to exhaust. (Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(d)(3) (2019).)

11

20. Between June 6, 2019, and July 18, 2023, Plaintiff David Wilson (CDCR No. K66474) submitted 22 non-health care related grievances to the OOA. (Moseley Decl. ¶¶ 7- 14, Exs. A-W.)

21. Of these 22 grievances, five raised issues involving alleged excessively hot temperatures or the presence of black mold in Facility B at the California Substance Abuse Treatment Facility and State Prison. (Moseley Decl. ¶ 8.)

22. In Appeal Log No. 1916131 (an appeal of Grievance Log No. SATF-19-05457), Wilson alleged that he and other inmates within the housing unit were experiencing "tension headaches" from excessively hot temperatures and the housing unit lacked adequate cooling measures. (Moseley Decl. ¶ 9, Ex. B.)

23. In Appeal Log No. 1916131, Wilson also alleged that he had notified Defendant Williams, Defendant Sherman, and the "Plant Operations Chief" of the issue on a written CDCR Form 22. Defendants Rocha, Marsh, and Collins processed Wilson's grievance regarding the issue. Wilson did not reference Defendant Leahy or Lines in the grievance or subsequent appeal. (Moseley Decl. ¶ 9, Ex. B.)

24. In a letter dated March 30, 2020, regarding Appeal Log No. 1916131, the OOA informed Wilson that due to time constraints, the Second Level Response served as the Department's final decision regarding the issue. (Moseley Decl. ¶ 9, Ex. B.)

25. In Appeal Log No. 004496, Wilson alleged that the California Substance Abuse Treatment Facility and State Prison was in violation of COVID-19 social distancing requirements. Defendant Cisneros processed Wilson's grievance regarding the issue. In his appeal to the OOA, Wilson further alleged that the excessive heat and poor ventilation exacerbates COVID-19. (Moseley Decl. ¶ 10, Ex. C.)

26. In a letter dated October 28, 2020, regarding Appeal Log No. 004496, the OOA acknowledged that the time period to respond to Wilson's appeal expired before the OOA was able to respond. Thus, as provided for in Title 15, subsection 3485(g)(10), the decision by the Office of Grievances dated August 12, 2020, served as the Department's final response to Wilson's allegations. (Moseley Decl. ¶ 10, Ex. C.)

27. In Appeal Log No. 274018, Claim 001, Wilson alleged the presence of black mold in Facility B, Buildings 1, 2, and 3, and requested it be removed. Wilson referenced Defendant Florez in the grievance and subsequent appeal. Defendant Smith processed Wilson's grievance regarding the issue. (Moseley Decl. ¶ 11, Ex. D.)

28. Appeal Log No. 274018, Claim 001, was denied by the OOA on November 8, 2022. (Moseley Decl. ¶ 11, Ex. D.)

29. In Appeal Log No. 366642, Wilson alleged that almost all inmates in Facility A have an on-going cough and a sore throat from dust or black mold on the roof of the housing unit and requested the dust be removed. Defendant Morales processed Wilson's grievance regarding the issue. (Moseley Decl. ¶ 12, Ex. E.)

30. Appeal Log No. 366642 was granted by the OOA on May 23, 2023. The OOA instructed the California Substance Abuse Treatment Facility and State Prison to open a new grievance log number, gather relevant information, and provide a substantive response to Wilson's claims. (Moseley Decl. ¶ 12, Ex. E.)

31. In Appeal Log No. 403594 (opened in response to the OOA grant of Appeal Log No. 366642), Wilson alleged that water pipes at the institution were not adequately cleaned. Defendant Marsh processed Wilson's grievance regarding the issue. (Moseley Decl. ¶ 13, Ex. F.)

32. Appeal Log No. 403594 was granted by the OOA in an amended decision. (Moseley Decl. ¶ 13, Ex. F.)

33. Aside from Appeal Log Nos. 1916131, 004496, 274018, 366642, and 403594, no other appeals were received by the OOA during the relevant timeframe containing allegations of excessively hot temperatures or the presence of black mold in Facility B at the California Substance Abuse Treatment Facility and State Prison. (Moseley Decl. ¶¶ 7-14, Exs. A-W.)

(Doc. 50-2 [hereafter UDF].)

//

//

13

## VI.    PLAINTIFF'S RESPONSE TO DEFENDANTS' UNDISPUTED FACTS

Plaintiff's opposition to Defendants' UDFs, in a section titled "Plaintiffs Exception and Denial to Defendants Summary Judgment," appears at pages 16 through 18 of his April 17, 2025, filing. (*See* Doc. 56 at 16-18.) Plaintiff uses the term "Exception" instead of "Admit" as instructed by the Local Rules. *See* Local Rule 260(b) ("Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts *and admit those facts that are undisputed* and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial" [emphasis added]). The Court also notes Plaintiff effectively denies all of Defendants' UDFs, citing to the various exhibits in support of the Declaration of Howard Moseley. (*Id.*)

At pages 6 through 14 of his opposition (*see* Doc. 56), in a section titled "Statement of Genuine Issues," Plaintiff appears to have intended to submit a separate statement of disputed facts. *See* Local Rule 260(b) ("The opposing party may also file a concise 'Statement of Disputed Facts,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication"). On page 14, Plaintiff states "the above is the ('Same') in plaintiff July 13, FIRST AMENDED COMPLAINT, at IV. FACTUAL ALLEGATIONS pages -3- through -10- minus the grievance number(s) and Exhibit's being exhibited at paragraphs 5 through 40." (*See* Doc. 94 at 14.) The Court has reviewed this section and the information provided above, (*see* IV. Plaintiff's Operative Complaint), and will not repeat this information for the sake of judicial efficiency. Suffice to say that although the operative complaint is Plaintiff's second amended complaint, Plaintiff relies on the factual allegations asserted in his first amended complaint.

## VII.    DISCUSSION

This Court must determine whether Plaintiff exhausted his administrative remedies regarding his Eighth Amendment conditions of confinement claims against Defendants Leahy and Lines.[5] Defendants' summary judgment motion concerns the exhaustion of administrative

---

[5] The merits of Plaintiff's claims will not be addressed.

remedies regarding Plaintiff's claims against Leahy and Lines only. *See, e.g.*, *Williams v. Thompson*, No. 1:19-cv-00330-AWI-CDB (PC), 2023 WL 2823388 at *1 (E.D. Cal. Apr. 7, 2023) ("at this stage of the proceedings, defendants' motion for summary judgment is based on non-exhaustion of remedies and does not address the merits of his constitutional claims").

### *Plaintiff Exhausted His Claims Against Defendants Leahy and Lines*

The Court finds there is no dispute that an administrative grievance process was available at SATF during the relevant period. UDF 1-19. In question is whether Plaintiff failed to exhaust his administrative remedies regarding his claims against Defendants Leahy and Lines.

The Court has reviewed the numerous grievances submitted in support of Defendants' summary judgment motion. (*See* Doc. 50, Exhibits B-W.) The Court identified the following grievances or appeals as relevant to whether Plaintiff exhausted his administrative remedies concerning his claims against Defendants Leahy and Lines.[6]

### Log No. 1916131

Plaintiff contends that he and a "Group Class"[7] are suffering from dizziness and tension headaches due to severe heat conditions. (Doc. 50-5 at 3 [Exhibit B].) Plaintiff notes his "CDCR-22's [of] 6/5/2019" to "Warden, Captain A. Williams & Plant Operations, Chief," requesting portable swamp coolers, reporting high heat and humidity, and a lack of exhaust or ventilation. (*Id*. at 3, 5.) Plaintiff complains about the lack of ice and water fountains with cold water and takes exception to the facility's heat plan. (*Id*. at 5.) He requested portable swamp coolers in B Facility, that cold water fountains be fixed or replaced, and sought compliance with "CDC[R] HEAT PLAN until Air-Conditioned B-Fac's Bldgs." (*Id*. at 3.)

The second level response includes the following decision:

> Based on the above information, this appeal is PARTIAL GRANTED in that 1) Facility "B" Staff are in compliance with OP 207 – Institution Heat Plan. 2) Building B1, drinking fountains are

---

[6] A review of Exhibits F through W of the Moseley declaration confirms Defendants' contention that the remaining grievances and/or appeals are not relevant to Plaintiff's claims in this action.

[7] The related CDCR 602-G form does not reference any prison official; rather, it summarizes the issue and the action requested and includes the names, assignments, unit numbers, and signatures from other inmates joining the group appeal. (Doc. 50-5 at 7-10.)

working and providing cool fresh water. 3) DENIED in that portable swamp coolers will not be provided to every housing unit / section on Facility "B."

(Doc. 50-5 at 15.) The OOA third level decision dated March 30, 2020, states that due to time constraints the second level response serves as the OOA's response to Plaintiff's appeal. (Doc. 50-5 at 5.)

Additionally, Exhibit B includes two CDCR Form 22s from Plaintiff dated June 5, 2019, directed to Defendant Sherman, the warden (Doc. 50-5 at 21) and to B Facility Captain Defendant "Williams, J. Ourqurie, et al." (*id*. at 22), requesting action due to high temperatures, seeking various cooling measures, including portable swamp coolers, ice, and ice drinks, as well as structural changes to existing buildings. A third CDCR 22 form is directed to "Plant Operations, Stationary Engineer, & Chief Engineer I, II," and makes the same assertion. (*Id*. at 25.) Plaintiff sought  supervisory review following the staff response to this CDCR 22 form. (*Id*.) The remainder of Exhibit B is comprised of various attachments included by Plaintiff (e.g., list of heat risk medications, Outside Temperature Record form, Heat Incident Log form).

### Log No. 004496

Plaintiff contends the SATF and CDCR's COVID-19 social distancing policy violates various state regulations and statutes and places him and other inmates in imminent danger and asserts inadequate ventilation "exacerbates COVID-19." (Doc. 50-6 at 5-6, 16, 18 [Exhibit C].) The grievance or appeal was considered and denied by SATF's OOG. (*Id*. at 3-4, 8; *see also* Doc. 50-4 at 44 [Exhibit A, Grievance and Appeal History].) The OOA claim decision response dated October 28, 2020, states that due to expiration of the 60-day deadline, the final decision of the OOA is "Time Expired." (Doc. 50-6 at 2.)

Additionally, Exhibit C includes a GA-0022 Inmate Request for Interview form dated August 16, 2020, directed to Defendant Cisneros, seeking a response to his grievance. (Doc. 50-6 at 7.) The exhibit also includes a CDCR Form 22 dated June 14, 2020, directed to "Appeals Coordinator(s) A. Shaw, J. Zamora, & AGPA, C. Ramos, et al." (Doc. 50-6 at 15.)

//

//

16

Log No. 274018

Plaintiff complains of black mold in B Facility, including toilet, shower, and bunk areas and sought its removal within 30 days as well as a review by independent industrial hygienists "for MOLD." (Doc. 50-7 at 9, 11 [Exhibit D].) The grievance or appeal was considered and denied by SATF's OOG. (Doc. 50-7 at 7-8.) The OOA denied the claim on November 8, 2022. (Doc. 50-7 at 2-3 [Claim #001].)

Log No. 366642

Plaintiff complains about having submitted CDCR Form 22s to the Building 1 "C/O for" two work orders requiring air filter replacements for "Swamp-Coolers/Air" and requested removal of an inch of dust or black mold on hot water pipes, air ducts, air registers and exhaust vents, windows and the ceiling, asserting almost all inmates in Section A were suffering from ongoing coughs and sore throats and exposing all to serious physical harm. (Doc. 50-8 at 9 [Exhibit E].) Plaintiff wanted "Staff from Plant Operations" to use an electric lift to reach the ceiling and a vacuum to remove the dusts and replace air filters. (Doc. 50-8 at 9-10.)

The grievance or appeal was considered and denied by SATF's OOG. (Doc. 50-8 at 7-8.) The OOA granted the claim on May 23, 2023. (Doc. 50-8 at 2-3.) Additionally, Exhibit E includes a CDCR Form 22 directed to "C/O Bldg. 1." (Doc. 50-8 at 11.)

Log No. 403594

Plaintiff claims the work performed following his earlier grievance concerning "cleaning of the ducking system" did not include all affected areas and that a "Stationary Engineer" claimed cleaning of the overhead pipes was the responsibility of "Plumbing" rather than "[HVAC]" and that other anticipated work fell under "another Work-Order." (Doc. 50-9 at 5-6 [Exhibit F].) The grievance was denied by SATF's OOG. (Doc. 50-9 20-21.) The OOA initially issued a "Time Expired" decision on September 11, 2023 (Doc. 50-9 at 4) before amending its decision and granting the claim and directing the SATF "open a new grievance log number, gather and preserve all relevant information, and provide a response to the claim that the water pipes were not cleaned" (Doc. 50-9 at 2-3).

Summary of Log Review

Plaintiff sought review to the highest level for each of the above complaints. Various names or entities are referenced although neither Defendant Leahy nor Defendant Lines is referenced by name in the grievance and/or appeal itself.

Analysis

The primary purpose of grievance is to alert prison officials to a problem and facilitate its resolution, not to provide personal notice to a particular official that he may be sued. *See Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016). A prisoner's failure to list all staff members involved in an incident in his grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude exhaustion of administrative remedies. *McClure v. Chen*, 246 F.Supp.3d 1286, 1291 (E.D. Cal. Mar. 28, 2017) (citing *Reyes*, 810 F.3d at 659).  However, "there must be a 'sufficient connection' between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had 'notice of the alleged deprivation' and an 'opportunity to resolve it.'" *McClure*, 246 F.Supp.3d at 1291 (quoting *Reyes*, 810 F.3d at 659).

As an initial matter, the Court notes that Plaintiff's identified "S. Leahy" as a "Sgt." who responded to a request for interview submission (*see* Doc. 26 at 1, 5) and "Jan Lines" as the "Plant Operations Chief Engineer" in the operative second amended complaint (*id*. at 1, 3).

The Court also agrees that an inmate's documented use of a request for interview form does not constitute exhaustion of administrative remedies. *See, e.g.*, *Smith v. Johal*, 754 Fed. Appx. 652 (9th Cir. 2019); *Ingram v. Hamkar*, No. 2:13-cv-2567 GEB KJN P, 2015 WL 410935, at *7 (E.D. Cal. Jan. 30, 2015) ("an Inmate Request for Interview form does not satisfy the requirements for administrative exhaustion"); *Kimbro v. Miranda*, No. 2:12-cv-2154 MCE KJN P, 2013 WL 6844488, at *8 (E.D. Cal. Dec. 23, 2013) ("plaintiff's alleged interview with defendant Miranda did not exhaust plaintiff's claim regarding his failure to be returned to Reno for surgery"); *Jones v. Roque*, No. C 12-2946 LHK (PR), 2013 WL 4426515 (N.D. Cal. Aug. 15, 2013) (inmate's two requests for interviews do not suffice to satisfy or excuse exhaustion); *Carreon v. Banke*, No. 2:11-cv-2952 WBS EFB P, 2012 WL 5381542, at *4, n. 5 (E.D. Cal. Oct.

18

31, 2012) (same). The Court, however, finds Plaintiff's claims against Defendant Leahy and Lines are exhausted regardless of the CDCR Form 22 or request for interview submissions.

Although Plaintiff did not specifically identify Defendants Leahy and Lines, on this record, the undersigned finds Plaintiff exhausted his administrative remedies regarding his claims against Defendants Leahy and Lines. In the relevant grievances, Plaintiff includes specific facts, identifies other involved prison officials or employees, and sufficiently referenced "Plant Operations," "Stationary Engineer," "HVAC" personnel and others. Thus, Plaintiff alerted prison officials to his problem and provided a sufficient connection between his claims and Leahy and Lines. *Reyes*; 810 F.3d at 659; *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009); *McClure*, 246 F.Supp.3d at 1291; *see also, e.g.*, *Whatley v. Cisneros*, No. 1:22-cv-00270-JLT-CDB, 2026 WL 453364, at * (E.D. Cal. Feb. 18, 2026) (recommending summary judgment be denied where plaintiff provided specific facts and identified other prison officials, including a reference to "prison 'administration,' such that the reference can be understood to include CDCR executives" such as Defendant Allison), adopted in full, 2026 WL 661178 (E.D. Cal. Mar. 9, 2026; *Cotton v. Medina*, No. 1:22-cv-00568-JLT-EPG (PC), 2024 WL 1313045, *8 (E.D. Cal. Mar. 26, 2024) (finding reference to "the Sergeant" in a grievance "contained enough factual specificity to put the prison on notice as to the nature of the wrong for which Plaintiff now seeks redress in this Court" and recommending the defendant's summary judgment motion be denied), adopted in full, 2024 WL 1932802 (E.D. Cal. May 2, 2024); *Williams v. Romero*, No. 2:17-cv-1884 TLN DB P, 2023 WL 4551436, at *10-11 (E.D. Cal. July 14, 2023) (finding "plaintiff's references to Abarca's phone calls for medical help and statement that Abarca had 'in fact' made those calls to be sufficient to have placed the prison on notice …. Defendant has not demonstrated that it is an indisputable fact that plaintiff failed to exhaust his remedies against Chuksorji"), adopted in full, 2023 WL 5723746 (E.D. Cal. Sept. 5, 2023); *Ardds v. Hicks*, No. 1:18-cv-01324-JLT-BAM, 2022 WL 507427, at *12 (E.D. Cal. Feb. 18, 2022) ("the Court finds that the undisputed evidence viewed in the light most favorable to Plaintiff shows that Plaintiff exhausted his administrative remedies as to his failure to protect claim against any Defendants who may have been members of the ICC and IDTT committees" at the relevant time, notwithstanding Plaintiff did not name in

19

his grievance any such ICC/IDTT committee member), adopted in full, 2022 WL 951173 (E.D. Cal. Mar. 30, 2022); *Zaiza v. Clark*, No. 1:19-cv-01476-DAD-GSA-PC, 2021 WL 5853325, at *12 (E.D. Cal. Dec. 9, 2021) (finding "[a]lthough letters and Form 22 requests are insufficient to exhaust remedies, this fact together with Plaintiff's grievances cause an inference that Defendants Clark and Gallagher knew about the limits on outdoor exercise in the Modified Program," and recommending motion to dismiss for a failure to exhaust be denied as to Clark and Gallagher), adopted in full, 2022 WL 256474 (E.D. Cal. Jan. 27, 2022); *Eichler v. Tilton*, No. CIV S-06-2894-JAM-CMK-P, 2009 WL 188783, at *3 (E.D. Cal. Jan. 27, 2009) (discussing grievances, plaintiff's purported failure "to name [CDCR directors or secretaries] or their policies," and noting the "grievance system is less about future litigation and more about reaching an internal and speedy resolution of the prisoner's problems").

In sum, viewed in the light most favorable to Plaintiff, on this record, the undersigned finds Defendants Leahy and Lines are not entitled to summary judgment concerning Plaintiff's claims against them. *See Albino*, 747 F.3d at 1166 (summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust).

## VI.    CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court **HEREBY RECOMMENDS** that Defendants' motion for summary judgment (Doc. 50) be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation

may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  __**March 17, 2026**__            ___/s/ *Sheila K. Oberto*___
                                          UNITED STATES MAGISTRATE JUDGE

21